IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x
In re                                : Chapter 11
                                     :
Telogy, LLC, et al.,                 : Case No. 10-10206 (MFW)
                                     :
                    Debtors.         : Jointly Administered
                                     : Ref. Docket No. 14, 56 & 75
---------------------------------------------------------------x

**ORDER: (I) APPROVING BIDDING PROCEDURES IN
CONNECTION WITH SALE OF SUBSTANTIALLY ALL
OF DEBTOR'S ASSETS; (II) SCHEDULING HEARING TO
CONSIDER SALE OF ASSETS; (III) APPROVING FORM AND
MANNER OF NOTICE THEREOF; (IV) APPROVING BREAK-UP FEE AND
EXPENSE REIMBURSEMENT AND (V) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Sale Motion")[1] of Telogy, LLC, one of the above-captioned debtors and debtors in possession ("Telogy" or the "Debtor"),[2] pursuant to sections 105(a), 363, 365, 503 and 507 of title 11 of the United States Code (the "Bankruptcy Code"), as supplemented by Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of orders approving, among other things, the sale of substantially all of the assets of the Debtor, related bidding procedures, and certain protections for the initial highest bidder of such assets; and the Court having determined that the relief provided herein is in the best interest of the Debtor, its estate, its creditors and other parties in interest; and due and adequate notice of the Sale Motion having been given under the circumstances; and upon the record of the hearing on the Sale Motion, and the full record of

---

[1] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion.

[2] The last four digits of the taxpayer identification numbers of Telogy and its affiliated debtor (together, the "Debtors") follow in parentheses: (i) e-Cycle, LLC (1582) and (ii) Telogy, LLC (1530). The Debtors' executive headquarters are located at 3200 Whipple Road, Union City, California 94587.

these cases; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby:

**FOUND AND DETERMINED THAT:**

A. Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when applicable. See Bankruptcy Rule 7052.

B. This Court has jurisdiction over the Sale Motion and the transactions contemplated by the Stalking Horse Purchase Agreement pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O). Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

C. Good and sufficient notice of the Sale Motion and the relief sought therein has been given under the circumstances, and no other or further notice is required except as set forth herein with respect to the Auction and Sale Hearing. A reasonable opportunity to object or be heard regarding the relief provided herein has been afforded to parties-in-interest.

D. The Debtor's proposed notice of the Auction and the Sale Hearing is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Auction, the sale of the Purchased Assets, and the Bidding Procedures to be employed in connection therewith.

E. The Debtor has been unable to find a purchaser for the Purchased Assets who is willing to enter into a definitive agreement to acquire the Purchased Assets on terms as favorable to the Debtor and its estate as the Stalking Horse Purchase Agreement.

F. The amounts of the Break-Up Fee and Expense Reimbursement are reasonable and appropriate, in light of, among other things, (i) the size and nature of the proposed sale under the Stalking Horse Purchase Agreement, (ii) the substantial time and efforts

2

that have been and will be expended by the Potential Purchaser, and (iii) the benefits that the Potential Purchaser has provided to the Debtor's estate and creditors and all parties in interest herein, notwithstanding that the proposed sale is subject to higher or better offers, and (iv) necessary to ensure that the Potential Purchaser will continue to pursue its proposed acquisition of the Purchased Assets. In particular, the Stalking Horse Purchase Agreement was the culmination of a process undertaken by the Debtor and its professionals to negotiate a transaction with a bidder who was prepared to pay the highest or otherwise best purchase price to date for the Purchased Assets in order to maximize the value of the Debtor's estate.

G. The Stalking Horse Purchase Agreement represents the best offer the Debtor has received to date as a result of its prepetition efforts to market the Purchased Assets for sale.

H. No other party to date has offered to enter into an asset purchase agreement for the acquisition of the Purchased Assets on terms acceptable to the Debtor. The execution of the Stalking Horse Purchase Agreement is a necessary prerequisite to determining whether any party other than the Potential Purchaser is willing to enter into a definitive agreement for the acquisition of the Purchased Assets on terms acceptable to the Debtor and its creditor constituency. The protections afforded to the Potential Purchaser by approval of the terms, amount and conditions to payment of the Break-Up Fee and Expense Reimbursement in accordance with the provisions of the Stalking Horse Purchase Agreement and this Order were material inducements for, and express conditions of, the Potential Purchaser's willingness to enter into the Agreement.

I. The Debtor has articulated good and sufficient business reasons for this Court to approve the Bidding Procedures, including: (a) the payment of the Break-Up Fee and

3

Expense Reimbursement, if any, to the Potential Purchaser in accordance with the Stalking Horse Purchase Agreement; (b) the scheduling of a bid deadline, Auction and Sale Hearing with respect to the proposed sale of the Purchased Assets; and (c) the establishment of procedures to fix the Cure Amounts to be paid pursuant to section 365 of the Bankruptcy Code in connection with the assumption, assignment and/or transfer of the Assumed Contracts and Assumed Leases.

J. The provisions of the Stalking Horse Purchase Agreement with respect to the Break-Up Fee and Expense Reimbursement were negotiated by the Debtor and the Potential Purchaser in good faith and at arms-length.

K. The Bidding Procedures are reasonably designed to maximize the value to be achieved for the Purchased Assets.

L. The Debtor has demonstrated that the Break-Up Fee and Expense Reimbursement are actual and necessary costs and expenses of preserving the Debtor's estates, within the meaning of section 503(b) of the Bankruptcy Code, and of substantial benefit to the Debtor's estates by inducing the Potential Purchaser's bid, which has established a bid standard or minimum for other bidders for the Purchased Assets, thereby ensuring that during the Auction, if any, the Debtor receives the highest or best bid possible for the Purchased Assets.

M. The entry of this Bidding Procedures Order is in the best interests of the Debtor, its estate, its creditors, and other parties-in-interest.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1. The Sale Motion is granted as and to the extent set forth herein.

2. Except for the objection of the Official Committee of Unsecured Creditors (the "**Committee**"), which was sustained in part and reflected in the terms of this order and overruled in part, all Objections to that portion of the Motion seeking approval of the Bidding

Procedures that have not been withdrawn, waived or settled, and all reservations of rights included therein, hereby are overruled and denied on the merits.

3. The Bidding Procedures, in substantially the form attached hereto as Schedule 1, are incorporated herein and approved, and shall apply with respect to the sale of the Purchased Assets. The Debtors are authorized to take all actions necessary or appropriate to implement the Bidding Procedures.

4. As further described in the Bidding Procedures, the deadline for submitting bids for the Purchased Assets (the "Bid Deadline") is **March 12, 2010 at 4:00 p.m. (prevailing Eastern Time)**. No bid shall be deemed to be a Qualified Bid (as defined in the Bidding Procedures) or otherwise considered for any purposes unless such bid meets the requirements set forth in the Bidding Procedures.

5. The Debtor may sell the Purchased Assets by conducting an Auction in accordance with the Bidding Procedures. If one or more Qualified Bids are timely received by the Debtor in accordance with the Bidding Procedures, the Auction shall take place on **March 16, 2010 at 10:00 a.m. (prevailing Eastern Time)** at the offices of Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York 10019, or such other place and time as the Debtor shall notify all Qualified Bidders, the agent for the Debtors' prepetition secured lenders (the "Agent"), any statutory committee appointed in these cases, and other invitees (as determined by the Debtor in consultation with the Agent). If, however, no such Qualified Bid is received by the Bid Deadline, then the Auction will not be held and the Debtor may promptly seek Bankruptcy Court approval of the Stalking Horse Purchase Agreement.

6. Each Qualified Bidder participating at the Auction will be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale.

7.  The Sale Hearing shall be held before this Court on **March 19, 2010 at 9:30 a.m. (prevailing Eastern Time)**, or as soon thereafter as counsel and interested parties may be heard.

8.  On or before five (5) business days after entry of this Bidding Procedures Order, the Debtor will cause the notice, substantially in the form attached hereto as <u>Schedule 2</u> (the "Notice of Auction and Sale Hearing"), and the Bidding Procedures Order to be sent by first-class mail postage prepaid, to the following: (a) the U.S. Trustee; (b) counsel for any statutory committee in these cases, if and when appointed; (c) counsel to the Agent; (d) all taxing authorities and other governmental agencies having jurisdiction over any of the Purchased Assets, including the Internal Revenue Service; (e) all parties that have requested or that are required to receive special notice pursuant to Bankruptcy Rule 2002; (f) all Persons known or reasonably believed to have asserted an Interest on any of the Purchased Assets; (g) the non-Debtor parties to the Executory Contracts and Unexpired Leases; (h) all Persons known or reasonably believed to have expressed an interest in acquiring all or substantially all of the Purchased Assets within the last six months, including the Potential Purchaser; (i) the Attorneys General in the State(s) where the Purchased Assets are located; (j) the United States Environmental Protection Agency; (k) any applicable state environmental agency; and (l) the top 20 unsecured creditors of the Debtor.[3] In addition to the foregoing, (i) electronic notification of this Sale Motion, the Bidding Procedures Order and the Notice of Auction and Sale Hearing also will be posted on: (A) the Court's website, www.deb.uscourts.gov; and (B) the case website maintained by the Debtors' claims and noticing agent, Epiq Bankruptcy Solutions, LLC,

---

[3]  The Notice of Auction and Sale Hearing will direct parties to contact Willkie Farr & Gallagher LLP, proposed co-counsel to the Debtors, or Broadpoint Capital, Inc., investment banker for the Debtors, for more information and will provide that any party in interest that wishes to obtain a copy of any related

http://chapter11.epiqsystems.com/telogy; and (ii) on or before five (5) business days after entry of the Bidding Procedures Order, the Debtor will: (A) serve the Notice of Auction and Sale Hearing on all known creditors of the Debtor; and (B) subject to applicable submission deadlines, publish the Notice of Auction and Sale Hearing once in one national publication the Debtor deems appropriate.

9. On or before five (5) business days after the entry of the Bidding Procedures Order, the Debtor shall serve by first class mail or hand delivery, a notice of potential assumption, assignment and/or transfer of the Executory Contracts and Unexpired Leases, substantially in the form attached hereto as Schedule 3 (the "Notice of Assumption and Assignment"), on all non-debtor parties to the Executory Contracts and Unexpired Leases with a copy to counsel to the Committee. The Assumption Notice shall identify whether each Executory Contract or Unexpired Lease is a Purchased Asset and the calculation of the cure amounts that the Debtor believes must be paid to cure all defaults outstanding under the Executory Contracts and Unexpired Leases as of such date (the "Cure Amounts"). In addition, if the Debtor identifies additional executory contracts or unexpired leases that might be assumed by the Debtor and assigned to Potential Purchaser not set forth in the original Notice of Assumption and Assignment, the Debtor shall promptly send a supplemental notice (a "Supplemental Notice of Assumption and Assignment") to the applicable counterparties to such additional executory contracts and unexpired leases.

10. Unless the non-debtor party to an Executory Contract or Unexpired Lease files an objection (the "Cure Amount/Assignment Objection") to (a) its scheduled Cure Amount, and/or (b) the proposed assumption, assignment and/or transfer of such Executory Contract or

---

document (including the Stalking Horse Purchase Agreement), subject to any necessary confidentiality agreement, may make a request in writing as specified in the Notice of Auction and Sale Hearing.

7

Unexpired Lease by the later of (i) 4:00 p.m. (prevailing Eastern Time) on the date that is three (3) business days prior to the Bid Deadline or (ii) ten (10) days after service of the Supplemental Notice of Assumption and Assignment (collectively, the "Cure/Assignment Objection Deadline") and serves a copy of the Cure Amount/Assignment Objection so as to be received no later than the Cure/Assignment Objection Deadline on the same day to: (a) the Debtor, 3200 Whipple Road, Union City, CA 94587 (Attn: Gary B. Phillips, Esq.); (b) Young Conaway Stargatt & Taylor, LLP, 1000 West Street, 17th Floor, P.O. Box 391, Wilmington, Delaware 19899-0391 (Attn: Matthew B. Lunn, Esq. and Donald J. Bowman, Jr., Esq.), co-counsel to the Debtors; (c) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York 10019 (Attn: John C. Longmire, Esq. and Shaunna D. Jones, Esq.), co-counsel to the Debtors; (d) counsel to any statutory committee that may be appointed in these cases; (e) Edwards Angell Palmer & Dodge LLP, 919 N. Market Street, 15th Floor, Wilmington, DE 19801 (Attn: Stuart M. Brown, Esq. and R. Craig Martin, Esq.), counsel to the Agent; (f) the Office of the United States Trustee, 844 King Street, Room 2313, Wilmington, Delaware 19801 (Attn: Richard Schepacarter, Esq.); and (g) Jager Smith P.C., One Financial Center, Boston, Massachusetts 02111-2621 (Attn: Brendan C. Recupero, Esq.), counsel to the Committee; and (h) Greenberg Traurig, LLP., The Nemours Building, 1007 North Orange Street, Suite 1200, Wilmington, Delaware 19801 (Attn: Sandra G. M. Selzer, Esq.), local counsel to the Committee then such non-debtor party will (i) be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts as of the Cure Date with respect to such Executory Contract and Unexpired Lease and the Debtors shall be entitled to rely solely upon the Cure Amount, and (ii) if the Executory Contract or Unexpired Lease was identified as a Purchased Asset and the Potential Purchaser is the Successful Bidder, be deemed to have consented to the assumption,

assignment and/or transfer of such Executory Contract and Unexpired Lease to the Potential Purchaser, and shall be forever barred and estopped from asserting or claiming against the Debtors, the Potential Purchaser or such other Successful Bidder or any other assignee of the relevant Executory Contract or Unexpired Lease that any additional amounts are due or defaults exist, or conditions to assumption, assignment, and/or transfer must be satisfied, as of the Cure Date, under such Executory Contract or Unexpired Lease.

11. If an objection challenges a Cure Amount, the objection must set forth the prepetition cure amount being claimed by the objecting party (the "Claimed Cure Amount") with appropriate documentation in support thereof. Upon receipt of an objection to a Cure Amount, the Debtor may, in its sole discretion, hold an amount equal to the Claimed Cure Amount in reserve pending further order of the Court or agreement between the Debtor and the objecting party. If the Debtor holds the Claimed Cure Amount in reserve, the Debtor may assume and assign the Assumed Contract that is the subject of an objection relating to that Assumed Contract's Cure Amount without further delay.

12. The Debtor, the Potential Purchaser, or the other Successful Bidder, as the case may be, may determine to exclude any Executory Contract or Unexpired Lease (an "Excluded Contract") from the list of Purchased Assets no later than the fifth (5th) business day prior to the Sale Hearing with notice to counsel to the Committee. The non-debtor party or parties to any such Excluded Contract will be notified of such exclusion by written notice mailed within two (2) business days of such determination.

13. In the event that the Potential Purchaser is not the Successful Bidder for the Purchased Assets and for those Executory Contracts and Unexpired Leases identified in the Notice of Assumption and Assignment, within two (2) business days after the conclusion of the

Auction for the Purchased Assets, the Debtor will serve a notice identifying the Successful Bidder to the non-debtor parties to the Executory Contracts and Unexpired Leases that have been identified in such Successful Bid. The non-debtor parties to the Executory Contracts and Unexpired Leases will have until **4:00 p.m. (prevailing Eastern Time) March 18, 2010** (the "Adequate Assurance Objection Deadline") to object to the assumption, assignment and/or transfer of such Executory Contract or Unexpired Lease solely on the issue of whether the Successful Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code (the "Adequate Assurance Objection").

14. Except with respect to an Adequate Assurance Objection, any objection to the sale of the Purchased Assets, or the relief requested in the Sale Motion must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) be filed with the clerk of the Bankruptcy Court for the District of Delaware, Third Floor, 824 Market Street, Wilmington, Delaware 19801, on or before **4:00 p.m. (prevailing Eastern Time) on March 12, 2010**, or such later date and time as the Debtor may agree; and (d) be served so as to be received no later than 4:00 p.m. (prevailing Eastern Time) on the same day, upon the Notice Parties. All objections must state with specificity the nature of such objection and will be heard by the Court at the Sale Hearing.

15. The Notice of Auction and Sale Hearing and the Notice of Assumption and Assignment to be issued in connection with the proposed sale of the Purchased Assets, substantially in the forms annexed hereto as Schedule 2 and Schedule 3, respectively, are approved.

16. The Sale Hearing may be adjourned, from time to time, without further notice to creditors or other parties-in-interest other than by announcement of said adjournment before this Court or on this Court's calendar on the date scheduled for said hearing.

17. The Break-Up Fee and Expense Reimbursement (subject to the submission of supporting documentation), as set forth in the Stalking Horse Purchase Agreement, are approved, provided, however, that the aggregate amount of the Break-Up Fee and Expense Reimbursement shall not exceed $500,430. The obligations of the Debtor to pay the Break-Up Fee and Expense Reimbursement: (i) shall be entitled to administrative expense claim status under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code; (ii) shall not be subordinate to any other administrative expense claim against the Debtors (other than any carve-out for professional fees and expenses included in the stipulation between the Debtors, the Agent, and certain of the Debtors' prepetition secured lenders regarding the Debtors' use of cash collateral); and (iii) shall survive the termination of the Stalking Horse Purchase Agreement

18. Except as otherwise provided herein and in the Bidding Procedures, Local Rule 6004-1(c)(ii) is waived.

19. Subject to the provisions of the Stalking Horse Purchase Agreement, the Bidding Procedures and this Bidding Procedures Order, the Debtor shall have the right as it may reasonably determine to be in the best interests of its estate, in consultation with the Agent, the Lenders (as defined in the Phillips Affidavit) and the Committee, to: (a) determine which bidders are Qualified Bidders; (b) determine which bids are Qualified Bids; (c) determine which Qualified Bid is the highest and best proposal and which is the next highest and best proposal; (d) reject any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (iii)

11

contrary to the best interests of the Debtor and its estate; (c) remove some of the Purchased Assets from the Auction; (d) waive terms and conditions set forth herein with respect to all potential bidders; (e) impose additional terms and conditions with respect to all potential bidders and the Potential Purchaser; (f) extend the deadlines set forth herein; (g) adjourn or cancel the Auction and/or Sale Hearing in open court without further notice; and (h) modify the Bidding Procedures as the Debtor (after consultation with the Agent) may determine to be in the best interest of its estate or to withdraw the Sale Motion at any time with or without prejudice.

20. The stays provided for in Bankruptcy Rules 6004(h) and 6006(d) are waived and Bidding Procedures Order shall be effective immediately upon its entry.

21. This Court shall retain jurisdiction over any matters related to or arising from the implementation of this Order.

Dated: February 9, 2010

Mary F. Walrath
United States Bankruptcy Judge