# SCHEDULE 1

## Bidding Procedures

# BIDDING PROCEDURES

By motion dated January 24, 2010 (the "**Motion**"),[1] Telogy, LLC ("**Telogy**" or the "**Debtor**")[2] sought approval of, among other things, the procedures through which it will determine the highest or otherwise best price for the sale (collectively, the "**Sale**") of substantially all of its assets (the "**Purchased Assets**"), as described in the Asset Purchase Agreement by and among McGrath Rent Corp ("**McGrath**" or the "**Buyer**") and Telogy, dated as of January 22, 2010 (the "**Stalking Horse Purchase Agreement**"), a copy of which is attached to the Motion as Exhibit A.

On February __, 2010, the United States Bankruptcy Court for the District of Delaware (the "**Court**") entered an order (the "**Bidding Procedures Order**") that among other things, authorized the Debtor to determine the highest or otherwise best bid for the Purchased Assets through the process and procedures set forth below (the "**Bidding Procedures**"). To the extent set forth in the Bidding Procedures Order, the Debtor, in consultation with the Official Committee of Unsecured Creditors (the "**Committee**"), reserves the right to modify or waive the Bidding Procedures; provided, however, that any such modification or waiver shall require the written consent of both the Buyer and the agent under the Debtor's prepetition secured credit facilities (the "**Agent**"), which consent shall not be unreasonably withheld.

**Participation Requirements**

In order to participate in the bidding process or otherwise be considered for any purpose hereunder, a person interested in the Purchased Assets (a "**Potential Bidder**") must first deliver the following materials to the Debtor, the Agent and each of their counsel and counsel to the Committee:

 i. An executed confidentiality agreement in form and substance satisfactory to the Debtor and its counsel which, in the aggregate, is no less favorable to the Debtor than the confidentiality agreement executed by the Buyer in connection with the Buyer's and the Debtor's negotiations relating to the Stalking Horse Purchase Agreement;

 ii. The most current audited and latest unaudited financial statements (collectively, the "**Financials**") of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of a Sale transaction, (x) Financials of the equity holder(s) of the Potential Bidder or such other form of financial disclosure as is acceptable to the Debtor that demonstrates the Potential Bidder's financial ability to consummate a competing Sale transaction and (y) a written commitment acceptable to the Debtor and its counsel of the equity holder(s) of the Potential Bidder to be responsible for the Potential Bidder's obligations in connection with a Sale

---

[1] Unless otherwise defined herein, all capitalized terms have the meanings given to them in the Motion.

[2] The last four digits of the taxpayer identification numbers of Telogy, LLC is "1530." The Debtor's executive headquarters' address is 3200 Whipple Road, Union City, CA 94587.

transaction (including being bound by the terms and conditions of these Bidding Procedures); provided, that, if a Potential Bidder is unable to provide Financials, the Debtor may accept such other information sufficient to demonstrate to the Debtor's reasonable satisfaction that such Potential Bidder has the financial wherewithal to consummate a Sale transaction. The Potential Bidder also must establish that it has the financial ability to consummate its proposed transaction within the timeframe contemplated for consummation of the Stalking Horse Purchase Agreement. A person meeting the requirements set forth in this paragraph shall be considered a "**Qualified Bidder**."

iii. The Debtor, after consultation with the Agent and the Committee, will promptly advise the Potential Bidder in writing of the Debtor's determination as to whether or not the Potential Bidder is a Qualified Bidder. For purposes of these Bidding Procedures, the Buyer is deemed a Qualified Bidder.

**Bid Requirements**

The Debtor, after consultation with the Agent and the Committee, shall determine whether a bid qualifies as a "**Qualified Bid**." To constitute a Qualified Bid, a bid (other than the Stalking Horse Purchase Agreement, which shall constitute a Qualified Bid) must be a written irrevocable offer from a Qualified Bidder and:

i. state that the Qualified Bidder offers to consummate the Sale for cash pursuant to a legally binding agreement that is substantially similar to the Stalking Horse Purchase Agreement, and has been marked to show amendments and modifications to the Stalking Horse Purchase Agreement, including price, assets to be purchased and terms that are being proposed by the Qualified Bidder, as applicable (the "**Marked Purchase Agreement**"). IF ANY BID IS CONDITIONED ON THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND/OR UNEXPIRED LEASES, THEN SUCH POTENTIAL BIDDER SHALL BE REQUIRED TO PROVIDE EVIDENCE OF ITS ABILITY TO PROVIDE ADEQUATE ASSURANCE OF FUTURE PERFORMANCE OF SUCH CONTRACTS OR LEASES ALONG WITH THE BID;

ii. equal or exceed the consideration being paid by the Buyer pursuant to the Stalking Horse Purchase Agreement by $525,430, which is the sum of: (a) $500,430 (the allowable amount of the Break-up Fee and Expense Reimbursement); and (b) $25,000, the minimum initial bidding increment;

iii. contain a list of the Debtor's executory contracts and unexpired leases with respect to which the bidder seeks assignment from the Debtor (which may include some or all of the contracts and leases included in the Stalking Horse Purchase Agreement and some or all of the excluded

|      | contracts and leases not included in the Stalking Horse Purchase Agreement); |
| ---- | --- |
| iv.  | confirm that the offer shall remain open and irrevocable as provided below; |
| v.   | enclose an executed copy of the proposed clean and Marked Purchase Agreement; |
| vi.  | provide written evidence that the Qualified Bidder has obtained authorization and approval from its board of directors (or comparable governing body) with respect to the submission of its bid and the execution of the Marked Purchase Agreement, or a representation that no such authorization or approval is required; |
| vii. | be accompanied with a certified or bank check or wire transfer in an amount equal to $844,050 as a minimum good faith deposit (the "**Minimum Deposit**"), which Minimum Deposit shall be used to fund a portion of the purchase price provided for in the bid; |
| viii.| be on terms that are not materially more burdensome or conditional than the terms of the Stalking Horse Purchase Agreement; |
| ix.  | not be conditioned on obtaining financing or the outcome of any due diligence by the Qualified Bidder; |
| x.   | by its terms remain open and irrevocable until the earlier of: (a) closing of the Sale to the Successful Bidder or the Back-up Bidder (each as defined below), as applicable; and (b) such date as the Debtor affirms in writing that it does not intend to pursue a Sale transaction; |
| xi.  | contain evidence satisfactory to the Debtor, after consultation with the Agent and the Committee, that the Qualified Bidder is reasonably likely to obtain prompt regulatory approval, if any is required, to purchase the Purchased Assets; |
| xii. | not request or entitle the Qualified Bidder to any break-up fee, expense reimbursement, or similar type of payment; and |
| xiii.| fully disclose the identity of each entity participating in connection with such bid, and the complete terms of any such participation. |

A bid received from a Qualified Bidder and that meets the requirements set forth above will be considered a Qualified Bid if the Debtor, in consultation with the Agent and the Committee, believes that such bid evidences a *bona fide* interest and ability to purchase the Purchased Assets. Notwithstanding anything contained herein to the contrary, the Stalking Horse Purchase Agreement submitted by the Buyer shall be deemed a Qualified Bid, which shall remain open and irrevocable until the earlier of (a) the termination of the Stalking Horse

Purchase Agreement in accordance with its terms, and (b) the date that is fifteen (15) days after the Auction.

After the Bid Deadline (defined below), the Debtor shall determine (after consultation with the Agent and the Committee) which Qualified Bid represents the then-highest or otherwise best bid (the "**Starting Qualified Bid**").

**Bid Deadline**

**The deadline for submitting bids on the Purchased Assets by a Potential Bidder shall be March 12, 2010 at 4:00 p.m. (prevailing Eastern Time) (the "Bid Deadline").**

A Potential Bidder that desires to make a bid must deliver written copies of its bid prior to the Bid Deadline to: (i) Young Conaway Stargatt & Taylor, LLP, 1000 West Street, 17th Floor, P.O. Box 391, Wilmington, Delaware 19899-0391 (Attn: Matthew B. Lunn, Esq. and Donald J. Bowman, Jr., Esq.), co-counsel to the Debtor; (ii) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York 10019 (Attn: John C. Longmire, Esq. and Shaunna D. Jones, Esq.), co-counsel to the Debtor; (iii) Telogy, LLC, 3200 Whipple Road, Union City, CA 94587 (Attn: Gary B. Phillips); (iv) the Office of the United States Trustee, 844 King Street, Room 2313, Wilmington, Delaware 19801 (Attn: Richard Schepacarter, Esq.), (v) Jager Smith P.C., One Financial Center, Boston, Massachusetts 02111-2621 (Attn: Brendan C. Recupero, Esq.), counsel to the Committee; and (vi) Greenberg Traurig, LLP., The Nemours Building, 1007 North Orange Street, Suite 1200, Wilmington, Delaware 19801 (Attn: Sandra G. M. Selzer, Esq.), local counsel to the Committee.

After the Bid Deadline, each Qualified Bidder that submits a Qualified Bid will be provided with copies of any other Qualified Bid(s). The Agent and the Committee shall be provided copies of all bids received by the Debtor.

**Obtaining Due Diligence Access**

The Debtor shall afford each Potential Bidder reasonable due diligence information. Site access shall be provided upon reasonable request to the Debtor at the discretion of the Debtor within its reasonable business judgment. Unless otherwise determined by the Debtor, the due diligence period will end on the Bid Deadline. Qualified Bidders are required to exercise their own discretion before relying on any information regarding the Purchased Assets provided by the Debtor.

The Debtor shall not be obligated to furnish any information relating to the Debtor, the Purchased Assets, and/or the Sale to any person except to a Potential Bidder. The Debtor shall give each Qualified Bidder reasonable access to all written due diligence information provided to another Potential Bidder. The Debtor shall coordinate all reasonable requests for additional information and due diligence access from Potential Bidders.

4

**Due Diligence From Potential Bidders**

Each Potential Bidder shall comply with all reasonable requests for additional information by the Debtor or its advisors regarding such Potential Bidder's financial wherewithal to consummate and perform obligations in connection with the Sale. Failure by the Potential Bidder to comply with requests for additional information may be a basis for the Debtor to determine that a bid made by the Potential Bidder is not a Qualified Bid.

**"As Is, Where Is"**

The Sale of the Purchased Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Debtor, its agents or estate, except to the extent set forth in the purchase agreement between the Debtor and the Successful Bidder. Except as otherwise provided in the Stalking Horse Purchase Agreement, all of the Debtor's right, title and interest in and to the Purchased Assets shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests therein (collectively, the "__Interests__"), such Interests to attach to the net proceeds of the Sale of the Purchased Assets, with the same validity and priority as existed immediately prior to such Sale.

Each bidder, other than the Buyer (whose acknowledgements and representations are contained in the Stalking Horse Purchase Agreement), shall be deemed to acknowledge and represent that it has had an opportunity to inspect and examine the Purchased Assets prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Purchased Assets or the completeness of any information provided in connection with the bidding process, in each case except as expressly stated in the Stalking Horse Purchase Agreement or Marked Purchase Agreement, as applicable.

**The Auction**

If a Qualified Bid by a Qualified Bidder is received by the Bid Deadline (other than the Stalking Horse Purchase Agreement), an auction (the "__Auction__") with respect to the sale of the Purchased Assets shall take place on **March 16, 2010 at 10:00 a.m. (prevailing Eastern Time)** at the offices of Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York 10019, or such other place and time as the Debtor shall notify all Qualified Bidders (including the Buyer) and other invitees. If, however, no such Qualified Bid is received by the Bid Deadline, then the Auction will not be held.

Auction Rules:

i. Only a Qualified Bidder (including the Buyer) and its authorized representatives who have submitted a Qualified Bid will be eligible to participate at the Auction. At the Auction, only the Buyer and other Qualified Bidders who have submitted a Qualified Bid will be permitted to

increase their bids. The bidding at the Auction shall start at the purchase price stated in the Starting Qualified Bid, and then continue in minimum increments of $25,000.

ii. Unless otherwise agreed by the Debtor, in its sole discretion and with respect of and in the best interests of the estate only, no Qualified Bidder will be permitted more than one-half hour to respond to the previous bid at the Auction and, at the expiration of such time (if no new Qualified Bid is received), the Auction shall conclude.

iii. During the course of the Auction, the Debtor shall inform each participant which Qualified Bid reflects, in the Debtor's view (after consultation with the Agent and the Committee), the highest or otherwise best offer. To the extent that such bid has been determined to be the highest or otherwise best offer entirely or in part because of the addition, deletion or modification of a provision or provisions in the Stalking Horse Purchase Agreement, or related ancillary agreement or, if applicable, in the Qualified Bid, other than an increase in the cash purchase price, the Debtor shall provide notice to each participant of the value ascribed by the Debtor to any such added, deleted or modified provision or provisions.

iv. <u>Adjournment of Auction</u>. The Auction may be adjourned as the Debtor, in consultation with the Agent and the Committee, deems appropriate. Reasonable notice of such adjournment and the time and place for the resumption of the Auction shall be given to Qualified Bidders that have submitted a Qualified Bid and other invitees.

v. <u>Subsequent Bids by Buyer</u>. The Buyer shall have the right to include the allowable amount of the Break-Up Fee and Expense Reimbursement in the amount of any subsequent bid that it makes in the Auction and, in the event the Buyer is the Successful Bidder (defined below) as a result of a subsequent bid made at the Auction, the Buyer shall be entitled to credit the allowable amount of the Break-Up Fee and Expense Reimbursement against the Purchase Price payable at Closing.

vi. Each Qualified Bidder participating at the Auction will be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale.

vii. Bidding at the Auction will be transcribed or videotaped.

**Other Terms**

All Qualified Bids, the Auction, and the Bidding Procedures are subject to such additional terms and conditions as are announced by the Debtor not inconsistent with the Bidding Procedures Order. At the conclusion of the Auction, in consultation with and upon approval of the Agent and the Committee, the Debtor shall identify the bid made pursuant to the Bidding

Procedures that represents, in the Debtor's sole discretion, the highest or otherwise best offer (the "**Successful Bid**," and the Qualified Bidder who submitted the Successful Bid, the "**Successful Bidder**") and the next highest or otherwise best offer after the Successful Bid (the "**Back-up Bid**," and the Qualified Bidder who submitted the Back-up Bid, the "**Back-up Bidder**"). If an Auction is held, the Debtor shall be deemed to have accepted a Qualified Bid only when (i) such bid is declared the Successful Bid at the Auction; (ii) definitive documentation has been executed in respect thereof; and (iii) the Court has entered an order approving such Successful Bid.

Following the entry of the Sale Order, if the Successful Bidder fails to consummate the Sale because of a breach or failure to perform on the part of the Successful Bidder, the Back-up Bidder will be deemed to have the new Successful Bid, and the Debtor will be authorized, but not required, to consummate the Sale with the Back-up Bidder without further order of the Court. In such case, the defaulting Successful Bidder's Minimum Deposit shall be forfeited to the Debtor and the Debtor shall have the right to seek any and all other remedies and damages from the defaulting Successful Bidder. If Buyer is chosen as the Back-up Bidder, Buyer shall be under no obligation to hold the Back-up Bid open, and not revoke such Bid, past the earlier of (i) the date of termination of the Stalking Horse Purchase Agreement in accordance with its terms, and (ii) the date that is fifteen (15) days after the entry of the Auction.

The Debtor will present the results of the Auction to the Bankruptcy Court at the Sale Hearing (as defined below), at which time certain findings will be sought from the Bankruptcy Court regarding the Auction, including, among other things, that: (i) the Auction was conducted and the Successful Bidder was selected in accordance with these Bidding Procedures; (ii) the Auction was fair in substance and procedure; and (iii) consummation of the Sale contemplated by the Successful Bid will provide the highest or otherwise best value for the Purchased Assets and is in the best interests of the Debtor and its creditors.

**Sale Hearing**

A hearing to consider approval of the Sale of the Purchased Assets to the Successful Bidder (or to approve the Stalking Horse Purchase Agreement if no Auction is held) will take place on **March 19, 2010 at 9:30 a.m. (prevailing Eastern Time)** before the Honorable Mary F. Walrath in the United States Bankruptcy Court for the District of Delaware, 824 N. Market Street, Wilmington, Delaware 19801 (the "**Sale Hearing**").

**Return of Deposit**

Except as otherwise provided in this paragraph with respect to any Successful Bid, the Minimum Deposits of all Qualified Bidders that submitted such a deposit under the Bidding Procedures shall be returned upon or within three (3) business days after the earlier of: (a) closing of the Sale to the Successful Bidder or the Back-up Bidder; and (b) such date as the Debtor affirms in writing that it does not intend to pursue a Sale transaction. The Minimum Deposit of the Successful Bidder shall be held until the closing of the Sale of the Purchased Assets and applied in accordance with the Successful Bid.

7

**Failure to Close**

If the Successful Bidder fails to consummate the transaction in accordance with the terms of the purchase agreement executed by the Successful Bidder by the closing date contemplated in the purchase agreement agreed to by the parties for any reason, the Debtor shall (except in the case of the Buyer, in which case the provisions with respect to the Break-up Fee and Expense Reimbursement in the Stalking Horse Purchase Agreement shall apply to the extent applicable): (i) retain the Successful Bidder's Deposit (except in the case of the Buyer, whose rights to any deposit shall be governed by the Stalking Horse Purchase Agreement); (ii) maintain the right to pursue all available remedies, whether legal or equitable available to them; and (iii) be free to consummate the proposed transaction with the Back-up Bidder at the highest price bid by the Back-up Bidder at the Auction, without the need for an additional hearing or Order of the Court.

**Reservation of Rights**

Except as otherwise provided in the Stalking Horse Purchase Agreement or the Bidding Procedures Order, the Debtor in consultation with the Agent and the Committee reserves the right as it may reasonably determine to be in the best interests of its estate, to: (i) determine which bidders are Qualified Bidders; (ii) determine which bids are Qualified Bids; (iii) determine which Qualified Bid is the highest and best proposal and which is the next highest and best proposal; (iv) reject any bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (c) contrary to the best interests of the Debtor and its estate; (v) remove some of the Purchased Assets from the Auction, (vi) waive terms and conditions set forth herein with respect to all Potential Bidders; (vii) impose additional terms and conditions with respect to all Potential Bidders; (viii) extend the deadlines set forth herein; (ix) adjourn or cancel the Auction and/or Sale Hearing in open court without further notice; and (x) modify the Bidding Procedures as it may determine to be in the best interests of its estate or to withdraw the Motion at any time with or without prejudice.

Nothing in these Bidding Procedures shall, or shall be deemed to amend, modify, limit or otherwise affect the terms or conditions of the Stalking Horse Purchase Agreement or the rights and remedies of the parties thereunder or under applicable bankruptcy law.

**Expenses**

Any bidders presenting bids shall bear their own expenses in connection with the proposed sale, whether or not such sale is ultimately approved, in accordance with the terms of the purchase agreement. Notwithstanding the foregoing, the Buyer may recover expenses in accordance with the provisions of the Stalking Horse Purchase Agreement.

# SCHEDULE 2

## Auction and Sale Notice

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x
In re                                                          :    Chapter 11
                                                               :
Telogy, LLC, et al.,                                           :    Case No. 10-10206 (MFW)
                                                               :
                    Debtors.                                   :    Jointly Administered
                                                               :
---------------------------------------------------------------x

## NOTICE OF AUCTION AND SALE HEARING

   **PLEASE TAKE NOTICE** that on January 24, 2010, Telogy, LLC ("**Telogy**"), one of the debtors and debtors in possession in the above-captioned cases (the "**Debtors**" or the "**Company**"),[1] filed a Motion for Orders: (A) (I) Approving Bid Procedures in Connection with Sale of Substantially All of its Assets; (II) Scheduling Hearing to Consider Sale of Assets; (III) Approving Form and Manner of Notice Thereof; and (IV) Approving Break-Up Fee and Expense Reimbursement; (B) (I) Authorizing and Approving Sale of Assets Free and Clear of Liens, Claims, Encumbrances, and Interests; and (II) Approving Assumption and Assignment of Executory Contracts and Unexpired Leases; and (C) Granting Related Relief (the "**Motion**") with the United States Bankruptcy Court for District of Delaware (the "**Bankruptcy Court**"). The Debtors seek to sell their assets free and clear of all liens, claims, encumbrances and other interests pursuant to section 363 of title 11 of the United States Code (the "**Bankruptcy Code**").

   **PLEASE TAKE FURTHER NOTICE** that on February [__], 2010, the Bankruptcy Court entered an order (the "**Bidding Procedures Order**") (i) approving bidding procedures, in the form annexed hereto as Exhibit A (the "**Bidding Procedures**") in connection with the Sale of substantially all of Telogy's assets; (ii) scheduling hearing to consider the Sale; (iii) approving form and manner of notice thereof; (iv) approving break-up fee and expense reimbursement; and (v) granting related relief.

   **PLEASE TAKE FURTHER NOTICE** that pursuant to the terms of the Bidding Procedures Order, an auction (the "**Auction**") with respect to the Purchased Assets[2] is scheduled to occur on **March 16, 2010, at 10:00 a.m. (prevailing Eastern Time)** at the offices of Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York 10019.

---

[1] The last four digits of the taxpayer identification numbers of the Debtors follow in parentheses: (i) e-Cycle, LLC (1582) and (ii) Telogy, LLC (1530). The Debtors' executive headquarters are located at 3200 Whipple Road, Union City, California 94587.

[2] All capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

- 1 -

**PLEASE TAKE FURTHER NOTICE** that only those parties that have submitted Qualified Bids (as defined in the Bidding Procedures) by no later than **March 12, 2010 at 4:00 p.m. (prevailing Eastern Time) (the "Bid Deadline")** may participate in the Auction. Any party that wishes to take part in this process and submit a bid for the Purchased Assets must submit their competing bid prior to Bid Deadline and in accordance with the Bidding Procedures. **Telogy reserves the right to remove any of the Purchased Assets from the Auction if, in its business judgment, it believes that value may be maximized through a private sale, lease termination, or rejection, of the relevant Purchased Assets. Any such private sale, lease termination, or rejection may be presented to the Court for approval at the Sale Hearing.**

**PLEASE TAKE FURTHER NOTICE** that the Court also scheduled a hearing to consider approval of the Sale of the Purchased Assets to the Successful Bidder or, alternatively, to the Back-up Bidder (as such terms are defined in the Bidding Procedures), or to approve the Stalking Horse Purchase Agreement if no Auction is held, before the Honorable Mary F. Walrath, United States Bankruptcy Judge, 824 N. Market Street, Wilmington, Delaware 19801 on **March 19, 2010 at 9:30 a.m. (prevailing Eastern Time) (the "Sale Hearing")**, or at such other time thereafter as counsel and interested parties may be heard. The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing.

**PLEASE TAKE FURTHER NOTICE** that any objections to the Sale of the Purchased Assets shall: (a) be in writing; (b) comply with the Federal Rules of Bankruptcy Procedure and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware; (c) be filed with the clerk of the Bankruptcy Court for the District of Delaware, Third Floor, 824 Market Street, Wilmington, Delaware 19801, on or before **4:00 p.m. (prevailing Eastern Time) on March 12, 2010**, or such later date and time as the Debtor may agree; and (d) be served so as to be received no later than 4:00 p.m. (prevailing Eastern Time) on the same day, to: (i) Telogy, 3200 Whipple Road, Union City, California 94587 (Attn: Gary B. Phillips, Esq.); (ii) Young Conaway Stargatt & Taylor, LLP, 1000 West Street, 17th Floor, P.O. Box 391, Wilmington, Delaware 19899-0391 (Attn: Matthew B. Lunn, Esq. and Donald J. Bowman, Jr., Esq.), co-counsel to the Debtors; (iii) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York 10019 (Attn: John C. Longmire, Esq. and Shaunna D. Jones, Esq.), co-counsel to the Debtors; (iv) counsel to any statutory committee that may be appointed in these cases; (v) Edwards Angell Palmer & Dodge LLP, 919 N. Market Street, 15th Floor, Wilmington, Delaware 19801 (Attn: Stuart M. Brown, Esq. and R. Craig Martin, Esq.), counsel to the Agent ; (vi) the Office of the United States Trustee, 844 King Street, Room 2313, Wilmington, Delaware 19801 (Attn: Richard Schepacarter, Esq.);(vii) Morrison & Foerster LLP, 425 Market Street, San Francisco, California 94105 (Attn: Walter I. Conroy, Esq.), counsel to the Potential Purchaser; (viii) Jager Smith P.C., One Financial Center, Boston, Massachusetts 02111-2621 (Attn: Brendan C. Recupero, Esq.), counsel to the Committee; and (ix) Greenberg Traurig, LLP., The Nemours Building, 1007 North Orange Street, Suite 1200, Wilmington, Delaware 19801 (Attn: Sandra G. M. Selzer, Esq.), local counsel to the Committee. All objections must state with specificity the nature of such objection and will be heard by the Court at the Sale Hearing.

**PLEASE TAKE FURTHER NOTICE** that this Notice of Auction and Sale Hearing is subject to the terms and conditions of the Bidding Procedures Order and shall control in the event of any conflict. Additionally, copies of the Motion, the Bidding Procedures and/or the Bidding Procedures Order may be obtained by written request to the Claims Agent, Epiq Bankruptcy Solutions, LLC, 757 Third Avenue, New York, NY 10017. In addition, copies of the aforementioned pleadings may be found on the Bankruptcy Court's website, www.deb.uscourts.gov, and are on file with the Clerk of the Bankruptcy Court, 824 Market Street, Wilmington, Delaware 19801.

Dated: February [ ], 2010   YOUNG CONAWAY STARGATT & TAYLOR, LLP
Wilmington, Delaware

Matthew B. Lunn (No. 4119)
Donald J. Bowman, Jr. (No. 4383)
Robert F. Poppiti, Jr. (No. 5052)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

-and-

WILLKIE FARR & GALLAGHER LLP
John C. Longmire
Shaunna D. Jones
Andrew D. Sorkin
787 Seventh Avenue
New York, New York 10019-6099
Telephone: (212) 728-8000
Facsimile: (212) 728-8111

*Co-Counsel to the Debtors
and Debtors in Possession*

# SCHEDULE 3

## Cure Notice

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x
In re                                               :    Chapter 11
                                                    :
Telogy, LLC, et al.,                                :    Case No. 10-10206 (MFW)
                                                    :
          Debtors.                        :    Jointly Administered
                                                    :
                                                    :
---------------------------------------------------------------x

### NOTICE OF ASSUMPTION AND ASSIGNMENT OF AGREEMENTS

     **PLEASE TAKE NOTICE** that, on January 24, 2010, Telogy, LLC ("**Telogy**"), one of the debtors and debtors in possession in the above-captioned cases (the "**Debtors**" or the "**Company**"),[1] filed a Motion for Orders: (A)(I) Approving Bid Procedures in Connection with Sale of Substantially All of its Assets; (II) Scheduling Hearing to Consider Sale of Assets; (III) Approving Form and Manner of Notice Thereof; and (IV) Approving Break-Up Fee and Expense Reimbursement; (B)(I) Authorizing and Approving Sale of Assets Free and Clear of Liens, Claims, Encumbrances, and Interests; and (II) Approving Assumption and Assignment of Executory Contracts and Unexpired Leases; and (C) Granting Related Relief (the "**Motion**") with the United States Bankruptcy Court for District of Delaware (the "**Bankruptcy Court**"). Telogy seeks to sell its assets free and clear of all liens, claims, encumbrances and other interests pursuant to section 363 of title 11 of the United States Code (the "**Bankruptcy Code**").

     **PLEASE TAKE FURTHER NOTICE** that on February [\_\_], 2010, the Bankruptcy Court entered an order (the "**Bidding Procedures Order**") (i) approving bidding procedures, in the form annexed hereto as Exhibit A (the "**Bidding Procedures**") in connection with the Sale of substantially all of Telogy's assets; (ii) scheduling hearing to consider the Sale; (iii) approving form and manner of notice thereof; (iv) approving break-up fee and expense reimbursement; and (v) granting related relief.

     **PLEASE TAKE FURTHER NOTICE** that the Court also scheduled a hearing to consider approval of the Sale of the Purchased Assets to the Successful Bidder or, alternatively, to the Back-up Bidder (as such terms are defined in the Bidding Procedures), or to approve the Stalking Horse Purchase Agreement if no Auction is held, before the Honorable Mary F. Walrath, United States Bankruptcy Judge, 824 N. Market Street, Wilmington, Delaware 19801 on **March 19, 2010 at 9:30 a.m. (prevailing Eastern Time)** (the "**Sale Hearing**"), or at such other time thereafter as counsel and interested parties may be heard. The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing.

---

[1]    The last four digits of the taxpayer identification numbers of the Debtors follow in parentheses: (i) e-Cycle, LLC (1582) and (ii) Telogy, LLC (1530). The Debtors' executive headquarters are located at 3200 Whipple Road, Union City, California 94587.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Bidding Procedures Order, attached hereto as Exhibit B is the list of Executory Contracts and Unexpired Leases and Telogy's calculation of the undisputed cure amounts that it believes must be paid in order to cure all defaults under the Executory Contracts and Unexpired Leases, as of the date of such notice (the "**Cure Amounts**") which Telogy currently proposes to assume and assign as part of the Sale. If zero or no amount is listed on Exhibit B, Telogy believes that there is no Cure Amount, as of the date of such notice (the "**Cure Date**"). In addition, if Telogy identifies additional executory contracts or unexpired leases that might be assumed by Telogy and assigned to the Potential Purchaser not set forth in this notice (the "**Notice**"), Telogy shall promptly send a supplemental notice (a "**Supplemental Notice of Assumption and Assignment**") to the applicable counterparties to such additional executory contracts and unexpired leases.

**PLEASE TAKE FURTHER NOTICE** that Telogy, the Potential Purchaser, or the other Successful Bidder, as the case may be, may subsequently determine to exclude any Executory Contract or Unexpired Lease (an "**Excluded Contract**") from the list of Purchased Assets no later than the fifth (5th) business day prior to the Sale Hearing. The non-debtor party or parties to any such Excluded Contract will be notified of such exclusion by written notice mailed within two (2) business days of such determination.

**PLEASE TAKE FURTHER NOTICE** that any objections to Telogy's assumption and assignment of the Executory Contracts and Unexpired Leases, including to the Cure Amounts set forth on Exhibit A hereto, must state with specificity the nature of the objection and the proposed cure amount, and be filed and served so as to be actually received by the following parties by the later of (i) **4:00 p.m. (prevailing Eastern Time) on March 9, 2010** or (ii) ten (10) days after service of the Supplemental Notice of Assumption and Assignment (the "**Cure/Assignment Objection Deadline**"): (a) Telogy, 3200 Whipple Road, Union City, California 94587 (Attn: Gary B. Phillips, Esq.); (b) Young Conaway Stargatt & Taylor, LLP, 1000 West Street, 17th Floor, P.O. Box 391, Wilmington, Delaware 19899-0391 (Attn: Matthew B. Lunn, Esq. and Donald J. Bowman, Jr., Esq.), co-counsel to the Debtors; (c) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York 10019 (Attn: John C. Longmire, Esq. and Shaunna D. Jones, Esq.), co-counsel to the Debtors; (d) counsel to any statutory committee that may be appointed in these cases; (e) Edwards Angell Palmer & Dodge LLP, 919 N. Market Street, 15th Floor, Wilmington, Delaware 19801 (Attn: Stuart M. Brown, Esq. and R. Craig Martin, Esq.), counsel to the Agent ; (f) the Office of the United States Trustee, 844 King Street, Room 2313, Wilmington, Delaware 19801 (Attn: Richard Schepacarter, Esq.); (g) Morrison & Foerster LLP, 425 Market Street, San Francisco, California 94105 (Attn: Walter I. Conroy, Esq.), counsel to the Potential Purchaser, (h) Jager Smith P.C., One Financial Center, Boston, Massachusetts 02111-2621 (Attn: Brendan C. Recupero, Esq.), counsel to the Committee; and (i) Greenberg Traurig, LLP., The Nemours Building, 1007 North Orange Street, Suite 1200, Wilmington, Delaware 19801 (Attn: Sandra G. M. Selzer, Esq.), local counsel to the Committee.

**PLEASE TAKE FURTHER NOTICE** that only in the event the Potential Purchaser is not the Successful Bidder for the Purchased Assets and for those Executory Contracts and Unexpired Leases identified in this Notice or a Supplemental Notice of Assumption and Assignment, within two (2) days after the conclusion of the Auction, Telogy shall serve a notice identifying the Successful Bidder to the non-debtor parties to the Executory Contracts and Unexpired Leases that have been identified in such Successful Bid. The non-debtor parties to the Executory Contracts and Unexpired Leases will have until **4:00 p.m. (prevailing Eastern Time) on March 18, 2010** (the "**Adequate Assurance Objection Deadline**") to object to the assumption, assignment and/or

transfer of such Executory Contract or Unexpired Lease based solely on the issue of whether the Successful Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code (the "Adequate Assurance Objection").

**PLEASE TAKE FURTHER NOTICE** that if a non-debtor party to an Executory Contract or Unexpired Lease fails to file an objection by the Cure/Assignment Objection Deadline, such non-debtor party will (i) be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts as of the Cure Date with respect to such Executory Contract or Unexpired Lease and Telogy shall be entitled to rely solely upon the Cure Amount, and (ii) if the Executory Contract or Unexpired Lease is identified in this Notice or a Supplemental Notice of Assumption and Assignment, be deemed to have consented to the assumption, assignment and/or transfer of such Executory Contract and Unexpired Lease to the Potential Purchaser or other such Successful Bidder, and shall be forever barred and estopped from asserting or claiming against the Debtors, the Potential Purchaser or other such Successful Bidder or any other assignee of the relevant Executory Contract or Unexpired Lease that any additional amounts are due or defaults exist, or conditions to assumption, assignment, and/or transfer must be satisfied, as of the Cure Date, under such Executory Contract or Unexpired Lease.

**PLEASE TAKE FURTHER NOTICE** that if a timely objection is received setting forth the prepetition cure amount being claimed by the objecting party (the "**Claimed Cure Amount**"), and the parties are unable to resolve such objection, Telogy may, in its sole discretion, hold an amount equal to the Claimed Cure Amount in reserve pending further order of the Court or agreement between the Debtor and the objecting party. If Telogy holds the Claimed Cure Amount in reserve, Telogy may assume and assign the Assumed Contract that is the subject of an objection relating to that Assumed Contract's Cure Amount without further delay.

Dated: February [_], 2010
Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____

Matthew B. Lunn (No. 4119)
Donald J. Bowman, Jr. (No. 4383)
Robert F. Poppiti, Jr. (No. 5052)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

-and-

WILLKIE FARR & GALLAGHER LLP
John C. Longmire
Shaunna D. Jones
Andrew D. Sorkin
787 Seventh Avenue
New York, New York 10019-6099
Telephone: (212) 728-8000
Facsimile: (212) 728-8111

*Co-Counsel to the Debtors
and Debtors in Possession*